UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
AUG 0 5 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-478-GWU

CLAUDIA S. LEWIS,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                                     DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Lewis

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

Lewis

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most

5

Lewis

of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Claudia S. Lewis, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease, a pain disorder, hypertension, a history of atrial tachycardia, and depression/anxiety. (Tr. 17). Nevertheless, the ALJ determined that the plaintiff retained the residual functional capacity to return to her past relevant work as a quality control inspector and, therefore, was not entitled to benefits. (Tr. 18-21). The Appeals Council declined to review, and this action followed.

Based on the opinions of two non-examining state agency physicians, the ALJ determined that Mrs. Lewis had the residual functional capacity to perform light level exertion, and also had the following non-exertional restrictions. (Tr. 18). She: (1) could not climb ladders/ropes/scaffolds or crawl; (2) could occasionally climb ramps and stairs, stoop, kneel, crouch, and reach; (3) needed to avoid moderate exposure to hazards such as dangerous machinery or unprotected heights; (4) needed to avoid concentrated exposure to extreme cold and vibration; and (5) was able to understand and remember simple, one or two step instructions, interact with co-workers and supervisors, and respond adequately to pressures found in most day-to-day work settings. (Tr. 18).

Lewis

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The ALJ rejected the opinion of the plaintiff's treating neurosurgeon, Dr. Greg Wheeler, who performed two fusions of her cervical spine. The first surgery, in October, 2000, was at the C6-C7 level and, afterwards, the plaintiff did well and returned to work. (Tr. 142, 159). In September, 2001, she was involved in a motor vehicle accident (Tr. 130), and, after testing showed a herniated disc, Dr. Wheeler performed a C5-C6 fusion on December 11, 2001. (Tr. 144-5). Subsequently, the plaintiff continued to complain of some residual back and arm pain, and on May 20, 2002, Dr. Wheeler opined that she was at maximum medical improvement and in his opinion was "100 percent occupationally disabled" and would not be able to return to work. (Tr. 151). He felt that she would have restrictions of not lifting over 10 pounds, or "standing for longer than 30 minutes at a time without a break for two hours in an eight-hour workday and the same applies to sitting." (Id.). Dr. Wheeler also stated that Mrs. Lewis should do no bending, twisting, stooping, crawling, or working around vibrating machinery or heights. (Id.). In August, 2002, Dr. Wheeler noted that the plaintiff had had recent MRIs, and one of them showed an osteophyte and degenerative disc disease at the T11-T12 level, although this was not a significant change from a previous MRI in March, 2001. (Tr. 229). He felt that the plaintiff would benefit from injective therapy, but this was not possible for financial

8

reasons. (Id.). Subsequent notes from Dr. Wheeler's record continued complaints of pain, but list no actual physical examination findings. (Tr. 228, 298-9).

The only other examiner to discuss specific restrictions was Dr. Mark Burns, who conducted a consultative physical examination on December 6, 2003, and found no limitations of range of motion, normal strength, and no neurological deficits. (Tr. 291-4). He did state that the plaintiff complained of pain throughout the evaluation, especially with movements involving the cervical and lumbar spine. (Tr. 294). However, he completed a physical residual functional capacity assessment stating that Mrs. Lewis could perform medium level exertion, and had no non-exertional restrictions. (Tr. 295).[1]

The plaintiff's treating family physician, Dr. Susan Dionisio, treated her for depression, anxiety, high blood pressure, and GERD symptoms, as well as complaints of neck pain. However, Dr. Dionisio's notes, while brief, do indicate on more than one occasion after the second surgery that the plaintiff's neck examination was normal. In March, 2002, the physician indicated that it had no spasm (Tr. 222) and, in November, 2003, she found a full range of motion of the neck (Tr. 301). No functional restrictions are suggested.

The ALJ rejected Dr. Wheeler's conclusory opinion of disability, and also rejected his specific functional restrictions because of the lack of objective findings

---

[1] Dr. Burns indicated that he reviewed records from Dr. Wheeler, although they were not specifically discussed in his report. (Tr. 296).

of deficits after the surgery. As previously noted, the ALJ relied instead on the opinion of state agency reviewers, who justified their opinion by stating that x-rays taken after the most recent surgery showed the fusion was solid at both levels, that there was no evidence of neurological deficits, and that there were no reports of motor deficits involving the upper or lower extremities. (Tr. 248-9). The reviewers also cited an Activities of Daily Living form prepared by a friend of Mrs. Lewis, which indicated that she was able to perform social activities of visiting two to three days a week, regularly went to church and doctors' appointments, and could shop once a week for three to five hours. (Tr. 93-4).

While the plaintiff argues on appeal that the opinion of Dr. Wheeler is entitled to controlling weight, the opinion of even a treating source is not binding when good reasons are identified for not accepting them. See, e.g., Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). In the present case, while the plaintiff had serious surgeries and Dr. Wheeler was a treating source, the ALJ is correct in stating that his office notes following the second surgery are completely devoid of any objective findings, such as limited range of motion, or sensory or reflex deficits. The only evidence from examining sources, Dr. Burns and the family physician, Dr. Dionisio, was that the plaintiff's neck examination was normal. Given the lack of findings from Dr. Wheeler, a reasonable fact finder could have concluded that, in the light of this

10

evidence, Dr. Wheeler's restrictions were excessive.[2] The plaintiff also suggests on appeal that the ALJ's reasoning in rejecting the treating physician opinion was not sufficiently detailed, the rationale given above was an adequate explanation of the ALJ's thought processes.

The plaintiff does not make any argument regarding restrictions from other causes, and the ALJ's choice of mental restrictions is supported by the opinion of a consultative psychologist, Dr. Kenneth Starkey. (Tr. 233-8). Nor, significantly, does the plaintiff make any specific arguments about her ability to return to her past relevant work as a quality control inspector in a sewing factory. The restrictions found by the ALJ are not inconsistent with the plaintiff's description of this job contained in her Disability Report and in her testimony at the administrative hearing. (Tr. 67, 318-19).

The decision will be affirmed.

This the ___5___ day of August, 2005.

G. WIX UNTHANK
SENIOR JUDGE

---

[2]There is also some evidence regarding daily activities from a third party which tends to support this view, although the plaintiff argues that it was taken out of context. The plaintiff argues that, read as a whole, the third party was reporting that the plaintiff would have to rest frequently while taking three to five hours to do her shopping. While this argument may have some merit, the medical evidence was sufficient for the ALJ to make his decision without reaching this point.